270 So.2d 842 (1972)
264 La. 135
STATE of Louisiana, Appellee,
v.
James REFUGE, Appellant.
No. 51905.
Supreme Court of Louisiana.
December 11, 1972.
*843 Walter E. Doane, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Refuge appeals his conviction of murder, La.R.S. 14:30, and sentence to death.
After this appeal was taken, the United States Supreme Court decided Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which holds that the imposition of the death penalty under statutes similar to Louisiana's constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Accordingly, in instances such as the present, we will, in the event of an affirmance of the conviction, remand the case to the trial court, with instructions to the judge to sentence the defendant to life imprisonment. State v. Gary Don Franklin, 263 La. 344, 268 So.2d 249.

Contentions of Error
Thirty-two bills of exceptions were reserved and perfected. However, twelve of them (on voir dire examination as to juror's feelings toward capital punishment) are expressly abandoned on appeal as now moot (and we further find no error was committed), since capital punishment is no longer an issue. At least four others, concerning evidentiary rulings, are not urged upon appeal and, on examination, possess no merit.
The more serious of the remaining bills concern: (1) the denial of a motion to suppress a confession as involuntary, and its admission into evidence (Bill Nos. 4, 5, 6, 19, 29, and 30); and (2) questions as to whether a witness had taken a lie detector test (Bill Nos. 2 and 28).

(1) The Confession
The decedent was killed during an armed robbery on November 29, 1969. The accused was arrested on December 17 and brought back to New Orleans for questioning that same afternoon. He executed statements that he had received the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and then at 8:25 PM gave a written statement admitting participation in the robbery but claiming that his companion Miller had fired the fatal shot.[1]
Refuge testified that he was punched and kicked by the detectives. He stated he complained to the prison doctor and to the magistrate. However, the officers testified that the confession was freely and voluntarily given, after the defendant had been informed of his right to remain silent and to have counsel, etc., as required by Miranda.
The prison doctor denied that any such complaint was made, at the time Refuge was afforded medical treatment for a minor stomach ailment on December 22nd and January 3rd. The prison booking clerk testified that Refuge had specifically denied any physical complaints at the time he was booked at 11:00 AM on December *844 18th, the morning after the alleged beating, and he stated there were no signs of bruises of scrap marks at that time.
We find no error in the trial court's finding that the confession was freely and voluntarily given and not the product of coercion. Such a factual determination by the trial judge, who is in the best position to determine credibility, will not be disturbed upon appeal unless clearly erroneous. State v. Hall, 257 La. 253, 242 So.2d 239 (1970).
(Similarly without merit is the defendant's objection to the introduction of a subsequent verbal admission to the same effect made by the defendant Refuge to another police officer the next morning. Bill Nos. 22, 23, and 26. By it, Refuge again admitted being a participant in the robbery (as a lookout), but again claimed that his companion Miller had done the shooting. The officer's testimony that the admission was free and voluntary and given after Miranda warnings is uncontradicted. This predicate to admission of the testimony was first proven outside the presence of the jury, which was withdrawn for that purpose. Tr. 554-574, 608.)

(2) Questions as to Lie Detector Tests
Two bills were reserved, when the trial court permitted testimony as to whether lie detector tests had been given to a witness. The trial court felt that the questions were proper, because no further questions were asked as to the result of the tests.
Although there is no Louisiana decision in point, the universal rule in American jurisdictions is that (at least in the absence of stipulation) the results of a lie detector test are inadmissible when offered by either party, either as substantive evidence or as relating to the credibility of a party or a witness. The essential reason is the lack of probative value and insufficient scientific reliability, as well as the possible unduly prejudicial effect upon lay triers of fact.
See: McCormick on Evidence, Section 207 (2d ed. 1972); Annotation, Physiological and psychological truth and deception tests, 23 A.L.R.2d 1306 (1952) and later cases supplementing it; 22A C.J.S. Criminal Law § 645(2); 32 C.J.S. Evidence § 588(4); 29 Am.Jur.2d "Evidence", Section 831; and the numerous decisions from many jurisdictions cited in these sources. See also Skolnick, Scientific Theory and Scientific Evidence: An Analysis of Lie-Detection, 70 Yale L.J. 694, 724-28 (1961). Cf., Roux v. New Orleans Police Department, 223 So.2d 905, 911 (La.App.4th Cir. 1969), cert. denied, 254 La. 815, 227 So.2d 148 (1969).
Moreover, because of the reasons for which the test itself is inadmissible, these same authorities summarize the uniform holdings to be that likewise inadmissible is the willingness or unwillingness of a witness or a party to submit to such examination, as is evidence that the test was administered. Such evidence is excluded as an attempt by indirection to evade the direct prohibition against lie-detection testimony for jury consideration, based upon the incompetency and unduly prejudicial effect of such testimony in judicial proceedings. See also Annotation, Propriety and prejudicial effect of comment or evidence as to accused's willingness to take lie detector test, 95 A.L.R.2d 819 (1964) and later cases supplementing it.
However, as there noted, if such evidence of this latter type is admitted, it may not necessarily be reversible error, depending upon whether the party was prejudiced by it.
The circumstances under which the issue arose in the present case are as follows:
The state called Miller as its witness. He had been charged along with the defendant Refuge with the murder and armed robbery in question. Miller had pleaded guilty to manslaughter and had been sentenced therefor. See Footnote 1 above. The defendant's confession had stated he and Miller participated in the armed robbery, *845 but that Miller had gone into the store and done the shooting. Miller's confession admitted that he and Refuge had participated in the armed robbery, but stated that Refuge had done the actual shooting.
On the stand, for the first time, Miller denied that Refuge was present at the scene and had done the shooting. Miller stated he was standing outside the store and heard a shot fired by a person unknown to him. The state pleaded surprise, and proceeded to establish that he had made a prior contradictory statement.[2]
Miller was subsequently asked by the state (after much examination as to the alleged reasons for the discrepancy in the statement), Tr. 479-80:
"Q. Do you recall at that time that a test was made on you?
"A. Yeah, you gave me a test.
"Q. What kind of test was given to you?
"A. Lie Detector test.
"Q. Who gave this test to you? Do you remember?
"BY [DEFENSE COUNSEL]:
I object to anything about a lie detector test, your honor. These things are not admissible in court.
"BY [THE STATE]:
I have this man under cross-examination. His veracity is at stake and I intend to call witnesses.
"BY THE COURT:
The results of a polygraph test are not admissible in evidence.
"BY [THE STATE]:
I'm not asking the results.
"BY [DEFENSE COUNSEL]:
What about the inference though? How can you stop the inference when you're talking about polygraphs.
"BY THE COURT:
Objection overruled. Let's proceed a little further.
"BY [DEFENSE COUNSEL]:
In an excess of caution, we reserve a bill, making the question, the testimony, the objection and the court's ruling part of the bill."
No further reference was made in Miller's testimony to the polygraph test, although subsequently a police officer was permitted to testify that Miller had taken the test (Bill of Exception No. 28), but not as to the results of it.
In its per curiam, the trial court explained its ruling as follows:
"It has been held in many courts that the mere fact the jury is apprised that a lie detector test was taken is not necessarily prejudicial if no inference as to the result is raised. Kaminski v. State, 63 So. 2d 339, Fla.; Johnson v. State, 166 So.2d 798, 805, Fla.App.; People v. Parrella, 158 Cal.App.2d 140, 322 P.2d 83, Cal.
"The State's question and the witness' answer were not prejudicial in any form or manner. A mere reference to the test was made. No mention as to its result was referred to."
The trial court was in error in its ruling, and the decisions cited do not support it.
*846 Kaminski v. State, 63 So.2d 339 (Fla. Sup.Ct.1953) is, in fact, leading authority to the contrary. There, the Supreme Court of Florida reversed a conviction because the prosecuting witness, whose credibility had been attacked on cross-examination, was asked on re-direct whether he had taken a lie detector test. The court overruled the objection, and the witness was permitted to testify merely that he had taken such a test, with no testimony as to its result.
In reversing, the court stated, 63 So.2d 340-341:
"When the trial judge allowed the evidence to be admitted, and sanctioned the submission by the statement he made, we are of the view that he committed as egregious an error as if he had admitted the results of the test to have been received in evidence over objection. For there can be no doubt that in initiating the inquiry the prosecutor intended to leave in the minds of the jurors the impression that because the witness Newbold had voluntarily submitted to a lie detector test prior to the time of trial he was a man of veracity and hence was telling the truth from the witness stand, no matter how inconsistent his tale might appear to be to the jurors when compared with the testimony offered by other State witnesses. . . .
"It was not fair to place the defendants in the entrapped position that required them at their peril either to pursue the inquiry as to the nature of the results of the test or to be damned by the adverse impressions which naturally would be expected to flow from their failure to do so. The practical effect of the admission of the testimony, as fortified by the remarks of the trial judge when he overruled the objection, was to allow, by inference, the admission of damaging evidence that would not have been legally admissible had it been submitted directly."
Similarly, in the present instance, the obvious purpose of the testimony was, by adverting to the lie detector test (despite its universally held inherent and prejudicial unreliability as proof in judicial proceedings), to compel the inference by the jury that Miller had taken the lie detector test and had been shown to have been truthful in his pre-trial confession to the police. Contrary to Miller's trial testimony, this confession had implicated the defendant Refuge in the armed robbery and murder for which he is charged.
The two other decisions relied upon by the trial court support the proposition that the mere fact a jury is apprised of a lie detector test is not necessarily prejudicial "if no inference as to the result is raised". However, in each instance, the defendant himself had injected the lie detector issue, and in each instance the court held the testimony as to the test was error, but nevertheless held that the error was not reversible under the particular circumstances involved.
In Johnson v. State, 166 So.2d 798 (Fla. App.1964), the officer who had conducted the lie detector test was permitted to testify solely as to statements made by the defendant. Out of the presence of the jury, initially the court had severely limited the examination so as to exclude all reference to the lie detector test or that the witness had conducted one. Defense counsel on cross-examination brought out that the witness had conducted the polygraph examination at police request; on re-direct the court subsequently foreclosed any exploration of the examination. 166 So.2d 800. The court concluded that the inferences from the reference to the polygraph examination, brought out by the defendant initiating inquiry, were not prejudicial, since the defendant himself testified that he had initially lied at the time of police examination. 166 So.2d 805.
In People v. Parrella, 158 Cal.App.2d 140, 322 P.2d 83 (1958), the defendant had improperly volunteered testimony of his offer to take a lie detector test. The prosecutor's cross-examination of him on the subject was held to be erroneous. However, the question of the lie detector test was *847 held not to be prejudicial, because it had been invited by the defendant, and because the trial court had carefully, correctly, and repeatedly warned the jury about the evidence, and because, moreover, the evidence of guilt was strong. 322 P.2d 88. See, to similar effect, State v. Bowen, 104 Ariz. 138, 449 P.2d 603 (1969).
In the present instance, an extremely close question is presented whether reversible error was committed by the State's improper elicitation of testimony as to whether a witness had taken a lie detector test. Nevertheless, we ultimately conclude that the error is not so prejudicial as to be reversible, upon examination of the entire record and in the context in which the error occurred. We reach this conclusion for the following reasons:
(1) It is unlikely that the mere fact that Miller had taken a lie detector test (without information as to the result) at the time he had given a pre-trial confession, would contribute to any great degree in the jury's belief that such pre-trial confession was true and his present testimony at the trial untrue. Miller, a self-admitted armed robber, in his trial testimony admitted he was present at the scene of the robbery and shooting (although he now denied Refuge was), and he also admitted that he had made the pre-trial confession implicating Refuge. In the total context of his testimony, completely excluding the single question and answer as to his taking the lie detector test, all the indicia point to his trial testimony as a belated fabrication intended to exculpate Refuge.
(2) The proof that Refuge committed the robbery and murder is great. His voluntary confession places him at the scene of the robbery as a principal, La.R.S. 14:24, although he denied pulling the trigger.[3] There was evidence that Refuge had borrowed the gun which, it was proved, had killed the decedent. The testimony of the eyewitnesses to the robbery-killing, while not positively identifying Refuge as the killer, was strongly corroborative that he was the participant who entered the store.
Under the particular circumstances of this record, we do not believe that error was prejudicial to the substantial rights of the accused. La.C.Cr.P. Art. 921.[4] In ultimately concluding that reversal is not required, we also take into consideration that the State's introduction of such testimony, although deliberate, was done in the context of the uncertainty of state law at the time.

Other Contentions
The remaining bills concerning the trial court's failure to require an answer to a bill of particular (Bill No. 1), failure to afford pre-trial discovery (Bill No. 2);[5] and the failure to allow access to grand jury testimony (Bill No. 3),[6] possess little merit under current jurisprudence. We further find no error in the trial court's evidentiary rulings concerning objections to the testimony regarding questions, and an unresponsive answer which the court instructed the jury to disregard, of the witness Marshall. See Bill Nos. 24, 25, and 27, and the trial court's per curiams explaining its rulings.

*848 Decree

Accordingly, for the reasons assigned, the conviction of the defendant is affirmed, but the death sentence imposed upon him is annulled and set aside, and the case is remanded to the Criminal District Court, Parish of Orleans, Section "H", with instructions to the trial judge to sentence the defendant to life imprisonment.
Affirmed in part, remanded in part.
BARHAM, J., concurs.
NOTES
[1] Miller likewise gave a written statement, admitting participation in the robbery, but claiming that the defendant Refuge had killed the victim. Miller pleaded guilty to manslaughter and received a 21-year sentence. The State called him as a witness.
[2] Despite the defendant's contention to the contrary (Bill of Exception No. 20), the state established a proper predicate of its surprise and the witness's hostility, so as to permit the impeachment of the present testimony by proof of prior contradictory statements. La.R.S. 15:487, 488; State v. Knox, 236 La. 461, 107 So.2d 719 (1959). See also La.R.S. 15:277. There is no merit to this bill.
[3] Whether he himself killed the victim, under his confession he is guilty of the murder as occurring during perpetration of the armed robbery. La.R.S. 14:30(2); State v. Hudson, 253 La. 992, 221 So.2d 484 (1969).
[4] La.C.Cr.P. Art. 921: "A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."
[5] See State v. Bailey, 261 La. 831, 261 So. 2d 583 (1972) and State v. Gladden, 260 La. 735, 257 So.2d 388 (1972).
[6] State v. Square, 257 La. 743, 244 So.2d 200 (1971).