356 So.2d 945 (1978)
STATE of Louisiana, Appellee,
v.
James Huntley FORREST, Appellant.
No. 60314.
Supreme Court of Louisiana.
March 6, 1978.
Rehearing Denied April 6, 1978.
Dissenting Opinion April 11, 1978.
*947 James E. Boren, Boren & Holthaus, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard E. Yokum, Dist. Atty., Joseph H. Simpson, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of first degree murder, La.R.S. 14:30 (1973). He appeals that conviction and the ensuing death sentence. We affirm the conviction, but vacate the sentence and remand the case to the trial court for resentencing.
The defendant's appeal presents fourteen assignments of error. The most serious issue is raised by Assignments 1 and 10. By them, it is argued that, under the statutes applicable at the time of the 1976 offense, the indictment charged (and the evidence at most proved) a non-capital second-degree murder, La.R.S. 14:30.1 (1975), not a capital-sentence first-degree murder, La.R.S. 14:30 (1973).
Assignments 1 and 10
The basis for this argument is that the state's case, if accepted, proves that the defendant Forrest offered Daniel Bezar $500 to kill Forrest's brother-in-law, Harvey Wren, and Bezar did so.
The 1973 first-degree murder statute, providing for the death penalty upon conviction, under the present facts was applicable only when "the offender has specific intent to commit murder and has been offered or has received anything of value for committing the murder." La.R.S. 14:30(5) (1973). Thus, for whatever reason, the legislature had determined that the actual killer, if hired, was subject to the death penalty, but not the one who hired him.
The state's theory was that, nevertheless, the defendant Forrest was guilty as a principal to Bezar's first-degree murder, La.R.S. 14:24, because he aided and abetted in its commission. The defendant points out, however, that the legislature had specifically determined that the offeree, not the offeror, committed first-degree murder.
Under accepted principles of interpretation of criminal statutes relied upon by the defendant, one guilty of legislatively excluded conduct cannot be held to be an accomplice or to have aided and abetted (as a principal) the offender who commits the crime by conduct which is within its definition. The "general rule recognizing guilt by incitement or abetment" is subject to several exceptions, one of which is where "the legislative body must have contemplated two parties and yet provided a penalty for only one." Perkins, Criminal Law 683 (2d ed. 1969). "One may be an accomplice in a crime which, by its definition, he could not commit personally. However, one is not an accomplice in a crime if . . . (b) the offense is defined so as to make his conduct inevitably incident thereto * * *." LaFave and Scott, Criminal Law 513 (see also 521-22) 1972 (Italics ours). See also Model Penal Code, Section 2.06(6) (1962).
Whatever technical merit there might be to the defendant's argumentif his sole connection with the offense had been to offer money to Bezar to commit the murder, *948 in the present instance the state's evidence shows that the defendant Forrest actually assisted in the commission of the murder by driving Bezar and the victim to the murder scene and by sliding the murder weapon (a shotgun) over to Bezar for his use in the murder. That is, this conduct of his in assisting in the murder was not conduct (offering to pay for the killing) excluded by the legislature as constituting the offense.
While Bezar himself (having been offered money to kill the victim) was guilty of first-degree murder as statutorily defined, La.R.S. 14:30(5) (1973), the defendant Forrest was also guilty as a principal in that crime, La.R.S. 14:24, in that he aided and abetted at the scene in the commission of this first-degree murder committed by Bezar. He is not insulated from prosecution for his direct participation in the first-degree murder by the circumstance that, except for his direct participation, he may have (as offeror, excluded from first-degree guilt) been subject to prosecution only as a principal in a non-capital second-degree murder, La.R.S. 14:30.1(1) (1975).
We find no merit to these assignments.
Assignments 5 and 6
Two other assignments (5 and 6) likewise present a serious issue. Over the defendant's objection, the state asked questions deliberately intended to bring before the jury the defendant Forrest's callous attitude towards his deceased first wife. In brief to this court, the state erroneously seeks to justify their admission as part of the res gestae.
Ten days before Wren's murder, he and his wife had purchased a $15,000 life insurance policy on Wren's life. The day before the murder, in a totally unrelated transaction, the defendant Forrest purchased some automobile liability insurance from the same agency.
The state had called Mary Ann Stewart, the wife of the insurance salesman, to testify to the purchase of the life insurance policy by Agnes Wren and her husband. Additionally, however, the prosecution elicited testimony about the subsequent visit to the insurance agency by the defendant Forrest to purchase the policy of automobile liability insurance for himself.
In the midst of this wholly irrelevant inquiry, over objection, in reply to a state question the witness testified that she asked Forrest whether he wished liability coverage for his wife as well, and that he responded: "[W]ell, she don't drive. She's six foot under." According to the witness, Forrest then laughed. The next witness, Gladys McKinney (Mrs. Stewart's sister), testified to the same effect, after the trial court overruled the defendant's objection to that testimony.
Unquestionably, the trial judge erred in overruling the defendant's objections. The only relevant testimony these witnesses had to give concerned defendant's knowledge about the prior visit of his sister and her husband to buy a policy on the latter's life. The entire line of testimony thereafter was irrelevant and should have been excluded.
Nevertheless, the fact that the testimony was irrelevant does not necessarily mean that it was prejudicial to the defendant. The defendant claims that this testimony amounts to character evidence and was therefore inadmissible in the state's case-in-chief. This begs the question of prejudice.
At worst, the testimony tends to show that the defendant was not fond of his wife, although it might also have been taken by the jury as an expression of a bizarre, black humor. Neither inference advances the case for proving that the defendant was the sort of person who would commit this murder or any crime, and that is the crucial issue.
Thus, even though the testimony was irrelevant, it was not prejudicial. Admission of it was erroneous, but not reversible.[1]
*949 Assignments 4, 9, 12, and 13
The state's evidence tended to show that, after the killing, Forrest had advised Bezar and the victim's wife (Agnes) not to take a lie detector test. The defendant complains that any mention by the state of a failure to take a lie detector test is irremediably prejudicial, citing State v. Refuge, 270 So.2d 842 (La.1972).
We find no merit to these assignments.
In Refuge, we summarized the reasons why neither lie detector tests, nor reference to witnesses taking or refusing to take one, are admissible under current jurisprudential theory. The reasons involve the judicial fear of the unreliability of such tests and their assumed lack of probative value; as well as the prejudicial effect upon a trier of fact, which might give undue weight to the results of such tests or to an inference of a witness's trial veracity or lack of it because he took or failed to take one.
In the present case, the state's evidence showed a conspiracy to kill Agnes' husband by Bezar, Agnes and the defendant Forrest. The admonition to his co-conspirators by Forrest for them not to take a lie detector test was one of several acts in furtherance of that conspiracy which the state attributed to him.
The significance of the evidence was not that the defendant was unwilling to take a lie detector test, but that he advised the others not to submit to one. The assignments all relate to questions as to whether he had advised Agnes and Bezar not to take lie detector tests. No questions were asked as to whether, after the crime, they or the defendant Forrest had taken or refused to take one.
No attempt was made by the questions or evidence to infer the present truthfulness or not of the trial testimony of the three (Forrest, Bezar, and Agnes). Its sole purport was to show that, as part of the conspiracy, after the killing Forrest had advised the other two not to take lie detector tests.
The concerns and values expressed by the rule reiterated by Refuge are not involved by the questions and testimony here educed. The admission of this testimony in proof of the conspiracy was not erroneous. It did not offend the rationale or purpose of the Refuge rule, which prohibits reference to lie detector tests insofar as offered or referred to for purposes of bolstering or weakening trial testimony of witnesses or their pre-trial utterances.
Other Assignments
Except for Assignment 15 (relating to the constitutional invalidity of the death sentence received by Forrest), the other assignments require little discussion:
Assignment 3: No abuse of discretion is shown by the trial court's denial of defendant's motion to appoint an expert to evaluate Bezar's mental capacity. There were no allegations of insanity. The evidentiary hearing indicated a person of low intelligence, but not of incompetence as a witness. Assignments 7 and 8: The black-and-white photographs objected to are "unpleasant . . . [but] not especially gruesome." State v. Smith, 327 So.2d 355, 361 (La.1975). They have only slight probative effect, but no reversible error is shown by their admission. Assignment 11: The prosecutor's suggestion by his cross-examination of defendant that the latter's memory was sharper in some details than in others does not appear to have exceeded proper limits. Assignment 14: Inasmuch as there was some evidence of defendant's guilt of first-degree murder, the motion for a new trial was correctly denied.
By Assignment 15, the defendant correctly urges that the death sentence imposed upon him must be vacated. The defendant's conviction is based upon La.R.S. 14:30 (1973). The mandatory death penalty thereby provided was declared unconstitutional. Roberts v. Louisiana, 428 U.S. 325, *950 96 S.Ct. 3001 (1976). The case must therefore be remanded for resentencing to the most serious penalty at the time for the next lesser included offense, second-degree murder. State v. Jenkins, 340 So.2d 157 (La.1976). La.R.S. 14:30.1 (1975) sets forth the penalty for that crime as life imprisonment without benefit of parole, probation, or suspension of sentence for a period of forty years.

Decree
Accordingly, we affirm the conviction, but we vacate the death sentence. We remand this case to the district court for re-sentencing as above set forth.
AFFIRMED, BUT REMANDED FOR RE-SENTENCING.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I am of the opinion that there is merit in defendant's assignment of errors Nos. 1 and 10. Under R.S. 14:30(5) only the offeree, and not the offeror, is exposed to conviction for the capital offense. And I do not find defendant a principal to the offeree's commission of first degree murder.
Additionally, I have serious reservations concerning the majority's finding non-meritorious assignments Nos. 5 and 6.
For these reasons, I dissent.
NOTES
[1] In brief, we are informed that the defendant's wife had died under mysterious circumstances while they were living in Indiana. The record does not so reveal, nor is it intimated, that the jury knew of this fact. If it had, the prejudice caused by this irrelevant inquiry might well have required reversal.