358 So.2d 912 (1977)
STATE of Louisiana
v.
Charone TITUS.
No. 59052.
Supreme Court of Louisiana.
May 16, 1977.
Dissenting Opinion May 24, 1978.
*913 Sargent Pitcher, Jr., Pitcher & French, Ltd., Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., John W. Sinquefield, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
Charone Titus was charged by bill of information with distribution of a controlled dangerous substance, to-wit: heroin, in violation of La.R.S. 40:966. After trial by jury, defendant was found guilty as charged and was sentenced to life imprisonment at hard labor under the provisions of the Louisiana Habitual Offender Law, La. R.S. 15:529.1. On appeal, defendant relies on three assignments of error for reversal of his conviction and sentence.
ASSIGNMENT OF ERROR NO. 1.
Defendant contends that the trial court erred in admitting into evidence the heroin purchased by an undercover agent from him in that there was a break in the chain of custody. Specifically he argues that, since the envelopes containing the drug were unsealed and several individuals other than those who testified at trial had access to the evidence, an inference is raised that the evidence may have been tampered with prior to trial.
Albert Burns, the undercover narcotics agent who purchased the substance from defendant, testified that the packets were placed in sealed envelopes, which were initialed by him and his partner and delivered to Jimmy Jones, the evidence officer for the narcotics division. Jones testified that upon receipt of the evidence envelopes, they were stored in the division's evidence locker until they were delivered to the crime laboratory. In addition he identified his signature on the lab analysis form which was turned into the laboratory when the evidence was surrendered, as well as receipts given to him at that time by Paul Cobb, the director of the laboratory. Cobb then testified that the evidence was stored in the evidence locker of the crime laboratory until it was tested by Irving Johnson, Jr.
*914 Johnson testified that he obtained the evidence from the locker and returned it there after the testing was complete. The envelopes were slit open by him in order to gain access to the drug for analysis purposes. Subsequently he removed the evidence from the locker and brought it to court where it was delivered to the district attorney who introduced it in evidence at a prior hearing. The testimony of the court reporter and of the secretary of the clerk of court indicated that after the drug was received in evidence it was stored in a locked evidence room from which it was removed on the day of trial.
The law does not require that evidence as to custody eliminate all possibilities that the object has been altered, but rather it suffices if custodial evidence establishes that it is more probable than not that the object is the one connected with the case. State v. Kinchen, 342 So.2d 174 (La.1977); State v. Singleton, 311 So.2d 881 (La.1975); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971).
A reading of the pertinent portions of the record reveals that the custodial evidence presented by the state adequately established the chain of custody. Defendant's contention that the chain was broken when the evidence envelopes were unsealed is without merit for it has been held that there is no sacramental requirement that the envelopes be sealed. Rather the lack of seals is merely a factor which bears on the weight of the evidence, a matter properly within the cognizance of the jury. State v. Rittiner, 341 So.2d 307 (La.1976); State v. Martin, 250 La. 705, 198 So.2d 897 (1967). Nor does his contention that access to the evidence by several individuals destroys the chain of custody have merit. This argument was raised and rejected in State v. Kelly, 296 So.2d 819 (La.1974). The chain of custody established possession of the evidence from the date of purchase by the undercover agent through analysis and up to its introduction at trial. Other problems with the evidence are left to the jury for its consideration.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2.
Defendant argues that the trial court erred in accepting Irving Johnson, Jr., as an expert in the field of chemical analysis of controlled dangerous substances. He contends that Johnson lacked the requisite experience and knowledge which are essential to qualify as an expert in this field and therefore he argues that his objection was improperly overruled. Additionally he submits that it was error to allow an expert to base his opinion on the findings of another expert.
At trial Johnson, a criminologist with the Louisiana State Police Crime Laboratory, testified that he had earned a B. S. degree in chemistry from Louisiana State University and had worked in private industry for nineteen years during which period he held positions with several chemical companies. For the past six years he had been employed at the crime laboratory and had worked primarily in the area of the analysis of controlled dangerous substances. He testified that he had conducted thousands of tests on these substances and had qualified as an expert on numerous occasions.
Louisiana Revised Statutes 15:466 provides:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
The competence of a witness to testify as an expert is a question of fact for the trial judge who is given wide discretion in passing on the qualifications of an expert. Such great weight is accorded to his ruling that it will not be disturbed in the absence of a clear showing of an abuse of discretion. State v. Hill, 332 So.2d 475 (La.1976); State v. Gomez, 319 So.2d 424 (La.1975); State v. Traylor, 311 So.2d 847 (La.1975); State v. Thorson, 302 So.2d 578 (La.1974).
*915 The trial court's ruling that Johnson qualified as an expert in the field of chemical analysis and identification of controlled dangerous substances was justified in light of his experience and training. Further the issue of Johnson's expertise in this field was examined in State v. Kinchen, 342 So.2d 174 (La.1977), where it was decided that the trial court's ruling was amply supported by the evidence. There was therefore no abuse of discretion on the part of the trial judge.
Next defendant contends that the witness was improperly permitted to base his opinion on the findings of another expert in that one of the tests upon which his opinion was based involved the use of a reference curve which was drawn by another expert. Johnson testified that, although the reference curve was made in the laboratory, it conformed to other curves published in the literature. Defendant cites State v. Rogers, 324 So.2d 358 (La.1975), in support of his position.
In State v. Rogers, supra, we held that an officer who was not sufficiently knowledgeable in the field of determining the speed of a vehicle by means of skid marks was improperly permitted to qualify as an expert, and that he could not testify on the basis of a template which had been prepared by experts and which was used to compute vehicle speed. We did not dispute, however, that a properly qualified expert witness might well refer to a chart which he understood so as to arrive at his expert opinion. Officer Johnson, therefore, being properly qualified as an expert in the field of chemical analysis and identification of controlled dangerous substances, could properly be allowed to base his expert opinion on the use of a reference curve.
ASSIGNMENT OF ERROR NO. 3.
Defendant contends that the trial court erred in overruling his motion for a mistrial. He argues that a statement made by the district attorney which offered defendant an opportunity to submit to a lie detector test was intentionally uttered to prejudice him and thereby mandated the granting of a mistrial.
The facts which gave rise to the prosecutor's statement are these. In the presence of the jury, defendant called to the stand his alleged coconspirator, Ronald Williams, who testified that he had been arrested and charged with selling heroin. Defendant then questioned him as to the disposition of the charge, to which Williams replied that he had spent three months in jail and had taken a lie detector test. Immediately the state objected to the testimony as irrelevant. Defendant argued that this line of questioning was the only means by which the jury could be apprised of the fact that no like offer to take a lie detector test had been made to defendant. It was contended that it was unfair to allow a co-conspirator to be freed on the basis of lie detector test results without affording defendant the same opportunity. At this point the state offered to administer a lie detector test to defendant at state expense during a trial recess if he would agree to submit the results to the jury. Asserting that the district attorney's statement was irreparably prejudicial to him, defendant moved for a mistrial. His motion was denied.
The results of a lie detector test remain inadmissible in Louisiana when offered by either party, either as substantive evidence or as relating to the credibility of a party or a witness. State v. Governor, 331 So.2d 443 (La.1976). Likewise inadmissible is the willingness or unwillingness of a person to submit to such an examination. State v. Refuge, 270 So.2d 842 (La.1972). However, if evidence of a lie detector test is admitted, a reversal will be required only if the defendant has been prejudiced by its introduction in evidence. State v. Refuge, supra.
Defendant's contention is that the Code of Criminal Procedure requires that a mistrial be ordered in this case because the district attorney's statement constituted both intentionally prejudicial conduct making it impossible for the defendant to obtain a fair trial (C.Cr.P. art. 775), and direct or indirect reference to the failure of the defendant *916 to testify in his own defense (C.Cr.P. arts. 770, 775).
With respect to the prejudicial conduct argument, we are not prepared to find the district attorney's admittedly unusual offer was prejudicial to defendant when considered in light of defense counsel's inappropriate assertions which prompted it. The prosecutor responded and not unreasonably, to a situation which had been intentionally structured by defense counsel. Furthermore, there was no indication that defendant was prejudiced in the eyes of the jury for, while he was belatedly offered the opportunity which his counsel had complained he had been unfairly denied, there was no indication from the colloquy which followed that defendant was required to respond by either accepting or rejecting the state's offer. Under the circumstances we do not find that defendant was prejudiced or denied a fair trial.
With respect to the argument that the prosecutor referred directly or indirectly to the failure of defendant to testify in his own defense, we find that contention equally non-meritorious. The prosecutor's statement or "offer" was not a direct or indirect allusion to defendant's not testifying in his defense. While the comment might broadly be interpreted to highlight defendant's opportunity to speak up, albeit under lie detector test circumstances, there was no indication that defendant had refused, or was refusing to do so.
Assignment number three lacks merit.
For the foregoing reasons the conviction and sentence of defendant Titus are affirmed.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
This Court continues to hold that polygraph test results are inadmissible in criminal trials, State v. Governor, 331 So.2d 443 (La.1976); State v. Corbin, 285 So.2d 234 (La.1973), and that the willingness or unwillingness of a person to submit to such an examination is likewise inadmissible. State v. Refuge, 270 So.2d 842 (La.1972).
The State's offer, in the presence of the jury, to allow the defendant to submit to a polygraph examination, with a stipulation that the jury be allowed to learn of the results, was particularly improper in view of the above cited jurisprudence. The State's belated and highly suspect offer to allow the defendant to submit to a polygraph examination came perilously close to prohibited comment on his failure to take the stand. See, La.C.Cr.P. art. 770. In any event, the State, by its offer, called upon the defendant to respond to its "challenge," either by submitting or refusing to submit to the examination. The defendant was thus compelled to give testimony against himself, either by taking the polygraph examination, or tacitly by refusing to do so.
That the State's attorney felt himself outmaneuvered by questionable trial tactics of defense counsel does not justify his resort to highly prejudicial "self help." Certainly the defendant was entitled to an admonition that the remarks of counsel were improper, and that the disposition of the case of State v. Ronald Williams was irrelevant to the present case. La.C.Cr.P. art. 771. The State was not entitled, in my view, to ignore the proper procedures for remedying any prejudice it might suffer as a result of defense counsel's questionable conduct by subverting the defendant's right to a fair trial.
I respectfully dissent.