456 So.2d 602 (1984)
STATE of Louisiana
v.
Ronald HOCUM.
No. 83-K-0732.
Supreme Court of Louisiana.
September 10, 1984.
*603 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Louise Korns, Kenneth Lassus, Ronald Loumiet, George Mustakas, Tom Porteous and Michael Cullen, Asst. Dist. Attys., for plaintiff-appellee.
Ralph L. Barnett, Gretna, for defendant-appellant.
DENNIS, Justice.
Defendant, Ronald Hocum, was convicted by a jury of inciting a felony, La.R.S. 14:28, and sentenced to eighteen months in jail. Defendant appealed to this court and assigned errors. We reverse. The trial court erred in permitting the state to introduce a statement by a prosecution witness that his grant of immunity from prosecution by the state was conditioned upon the witness taking and successfully passing a polygraph examination prior to giving testimony against the defendant.
The controversy involved in defendant's meritorious assignment of error centers around the testimony of Clay Gaulon, defendant's former employer, an alleged co-conspirator in the offense, and the only witness solidly linking defendant with the crime. The state's evidence at trial showed that in February 1981 Hocum arranged to have Gaulon abduct Hocum's 17 month old daughter from her nurse at Hocum's house; Hocum plotted only with Gaulon but was aware that Gaulon would recruit others to assist him; Gaulon's confederates were aware of Hocum's identity but did not communicate directly with him; Hocum planned to obtain a large sum of money from sympathetic wealthy friends as ransom in connection with the kidnap ruse to be shared with Gaulon and his assistants' Hocum's scheme fell apart when the nurse called in the police, and the child was released unharmed.
Within a week of the child's release Gaulon and his two confederates were arrested. Upon questioning the three men confessed, naming Hocum as the author of the scheme. Gaulon and one of the men who entered Hocum's house related their stories to the grand jury and Hocum was indicted. None of the others involved in the kidnapping have been prosecuted.
*604 At trial Gaulon testified, identifying Hocum as the instigator of the conspiracy. Defense counsel vigorously cross-examined, seeking to discredit his testimony by revealing his agreement with the state to testify in return for immunity from prosecution. Following Gaulon's testimony, the state called Tom Porteous, a supervisor with the district attorney's office, to the witness stand. Porteous testified that he participated in negotiating the immunity agreement worked out between the state and Clay Gaulon's attorneys and described the agreement to the jury:
It was basically five fold; that in return for his testimony that I would give him immunity provided these things happened: 1. that there was no indication that the child had been subject to any physical or sexual abuse; 2. that he in fact give us a statement and testify; and 3. that the agreement did not apply to committing perjury; and 4. that he took and successfully pass ...
At this point defense counsel objected and, following a bench conference, requested a momentary recess to allow for discussion. The trial judge refused this request however and, in the presence of the jury ruled:
[Counsel for Defendant], you make your argument but I'm going to permit Mr. Porteous to tell us the complete agreement. The jury is entitled to know the complete agreement. Now Mr. Porteous would not be permitted to tell us what happened if a Polygraph test was administered, that is not for the jury to consider, but since it was part of the agreement he may state that. Alright, you can ask a question.
The prosecutor resumed his examination of the witness, who stated:
The 4th was that he took and successfully pass a polygraph examination and the 5th was that the immunity would only apply to the crime here present; that there was not any other criminal conduct and it would not apply to that.
Defense counsel moved unsuccessfully for a mistrial based upon "the disclosure of things that could not be brought into this Court at anytime ..." Hocum thereafter took the stand and denied any complicity in the kidnapping.
In rebuttal argument, the state's attorney invited the jury to draw a negative inference from the fact that defense counsel did not discuss the details of the immunity agreement during his closing argument. The prosecutor then reminded the jury of Tom Porteous' testimony: "I'll tell you what it was ... you must successfully complete a polygraph examination before you're allowed to go to the Grand Jury and make statements after those original statements."
After a full reconsideration of the problem of lie detector evidence, this court recently declared it to be the judicial policy of Louisiana to exclude for any purpose polygraph evidence in criminal trials. State v. Catanese, 368 So.2d 975 (La.1979). The principal reasons for such exclusion were stated to be: (1) the propensity of triers of fact to give conclusive weight to the polygraph expert's opinion; (2) The lack of a regulatory program for maintaining an adequate level of examiners' ability, experience, education, integrity and availability and (3) The need for procedural rules and safeguards governing the introduction of polygraph evidence. State v. Catanese, supra at 981.
See also, State v. Whitmore, 353 So.2d 1286 (La.1978); State v. Davis, 351 So.2d 771 (La.1977); State v. Schouest, 351 So.2d 462 (La.1977); State v. Weeks, 345 So.2d 26 (La.1977); State v. Governor, 331 So.2d 443 (La.1976); State v. Corbin, 285 So.2d 234 (La.1973); State v. Refuge, 270 So.2d 842 (La.1972).
Subsequently, this court made it clear that the Catanese rule excluding polygraph evidence for any purpose from criminal trials also operates to prevent any reference during trial to the fact that a witness has taken a polygraph examination with respect to the subject matter of his testimony. State v. Tonubbee, 420 So.2d 126 (La. 1982); State v. Davis, 407 So.2d 702 (La. 1981). Such a reference invites a probable inference by the jury that the witness *605 passed the polygraph examination and therefore is testifying truthfully. State v. Davis, supra at 706; see also, State v. Refuge, supra at 846.
By informing the jury that the witness had testified under protection of a grant of immunity, that the grant of immunity was conditioned upon his taking and passing a polygraph examination, and that the grant of immunity did not apply to perjury or any crime other than the Hocum abduction, the state, in effect, informed the jury that the witness had passed an examination with regard to the Hocum case and would testify at trial consistently with his examination or expose himself to a perjury prosecution. Thus, the state's conduct and the trial judge's ruling were clear violations of this court's decisions prohibiting the use of polygraph evidence in criminal trials.
The trial court fell into error because it assumed that the state had a duty to place the entire immunity agreement before the jury. It is true that suppression of material evidence constitutes a violation of due process justifying a new trial irrespective of the good faith or bad faith of the prosecution; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and, that when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Evidence is not admissible, however, simply because it is contained in an immunity or plea agreement which must be disclosed to the court and the defendant. References to irrelevant, prejudicial and otherwise inadmissible matters are often excised. See, e.g., United States v. Roberts, 618 F.2d 530 (9th Cir.1980); United States v. Arroyo-Angulo, 580 F.2d 1137 (2nd Cir.1978). Consequently, the state was obliged to disclose the terms of its immunity for testimony agreement with its witness, but that duty did not make evidence of a polygraph examination admissible or give the state the right to introduce it over defendant's timely objection.
We do not, however, automatically reverse a conviction whenever an impermissible reference is made to the occurrence of a polygraph examination during a criminal trial. A reversal and a new trial is required only if there is a reasonable possibility that the error complained of might have contributed to the conviction. State v. Gibson, 391 So.2d 421 (La.1980).
Here the state's case against Hocum depended almost entirely on Gaulon's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Gaulon's credibility as a witness was therefore an important issue in the case, and there is more than a reasonable possibility that the jury's knowledge that Gaulon had successfully passed a polygraph test on the subject of his testimony could have affected its judgment and contributed to its verdict.
The judgment of conviction is therefore reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.