JASPER E. JONES, Judge.
The defendant, Donald Glenn Parker, was charged by bill of information with the crime of perjury in violation of LSA-R.S. 14:123. The defendant was found guilty of the charged offense by a six man jury. The trial court imposed a two year sentence at hard labor and fine of $1,000 or six months in jail in default of payment. The defendant appeals the conviction and sentence. We reverse.
The record reflects a Grand Jury was convened in Red River Parish to investigate the theft of oilfield equipment and the related murder of Perry Cason. The defendant, Donald Parker, appeared before the Grand Jury and gave testimony implicating Danny Bradshaw in the murder of Perry Cason.
The defendant subsequently took a polygraph examination concerning his testimony before the Grand Jury. A videotape of this examination was recorded which displayed the defendant attached to the lie detector apparatus. In the course of the examination the defendant admitted some of his statements made before the Grand Jury were false, including statements incriminating Bradshaw.
The defendant was charged with perjury arising from his testimony to the Grand Jury. The videotape of defendant's polygraph examination was shown to the jury over defense objection. The jury returned a guilty verdict.
On appeal, the defendant asserts the following assignments of error:
(1) The trial court erred in allowing the jury to view the videotape of the defendant’s polygraph examination;
(2) The state failed to provide sufficient evidence to support the defendant’s conviction for perjury;
(3) The trial court failed to adequately comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1;
(4) The trial court imposed an unconstitutionally excessive sentence.
Because we reverse the defendant’s conviction for perjury based upon the defendant’s first two assignments of error, we pretermit our discussion of the two remaining assignments of error.
At the defendant’s trial for perjury the state sought the introduction of the videotape of the defendant’s polygraph examination wherein the defendant confessed to the falsity of statements he made before the Grand Jury. Defense counsel objected to the introduction of the videotape citing the jurisprudentially created rule excluding polygraph evidence in criminal trials. The trial court overruled the objection. The videotape was played to the jury. We conclude the trial court erred in ruling the videotape admissible for the following reasons.
The fact that a polygraph test has been taken and the results of a polygraph test are inadmissible in a criminal trial. State v. Hocum, 456 So.2d 602 (La.1984); State v. Edwards, 406 So.2d 1331 (La.1981); State v. Governor, 331 So.2d 443 (La.1976). The judicial policy as fashioned by our supreme court excludes for any purpose the *113 admission of polygraph evidence in criminal trials for three principal reasons:
(1) the propensity of the trier of fact to give conclusive weight to the polygraph expert’s opinion;
(2) the lack of a regulatory program for maintaining an adequate level of examiners’ ability, experience, education, integrity and availability; and
(3) the need for procedural rules and safeguards governing the introduction of polygraph evidence.
See State v. Hocum, supra; State v. Cata-nese, 368 So.2d 975 (La.1979) and citations therein.
The court in Hocum, supra, explained the reason why the very fact that the witness has taken a polygraph is inadmissible is because this fact invites a probable inference that the witness has passed the polygraph and is testifying truthfully.
A trial court’s erroneous ruling on admissibility of an item of evidence does not warrant the reversal of a conviction unless the error is prejudicial to the defendant. State v. Cotton, 511 So.2d 1207 (La. App.2d Cir.1987); LSA-C.Cr.P. art. 921; State v. Johnson, 457 So.2d 732 (La.App.2d Cir.1984), writ den., 460 So.2d 608 (La. 1984). In determining whether the error is harmless, the reviewing court must determine whether there is a reasonable possibility that erroneously admitted evidence might have contributed to the conviction and the court must be able to declare a belief that the error was harmless beyond a reasonable doubt. State v. Cotton, supra, and citations therein.
Conceding the inadmissibility of the polygraph examination in a criminal trial, the state argues the prohibition was not violated as no mention of the results of defendant’s polygraph examination was made in the presence of the jury. The defendant contends the admission of the videotape in evidence displaying defendant attached to the polygraph apparatus is tantamount to the admission of the results of the test. The defendant contends after viewing the videotape the jury can only reasonably infer from the very nature of the charge of perjury that the defendant was subjected to a polygraph examination and that the results of the examination indicated the defendant gave false testimony to the Grand Jury.
We find the defendant’s argument meritorious. The state’s argument that the results were not introduced into evidence is not supported by the record.
We have reviewed several times the audio and visual portions of the videotape. We note the jury observed the defendant being instructed by the examiner, Officer Kavanaugh, to be seated in a chair next to a table on top of which was placed a mechanical device plugged into a printer from which periodically the test results were emitted. The examiner attached electronic bands which were strapped across the defendant’s chest while a systolic blood pressure band was placed on defendant’s upper left arm. The examiner periodically approached the defendant throughout the examination and made necessary adjustments. Twice during the examination the questioning was suspended while the examiner printed the accumulated material. At one such juncture the following exchange occurred:
Q. How do you think you did today?
A. I should have passed.
Q. This is a different set of questions. I am going to tear this off and let you sign it and then we are going to discuss the Grand Jury questions.
A. Am I having trouble with any of them? Q. Yes, you are. I need to see which one it was.
A. Huh?
Q. You are having trouble again today, but I have to see which one it was.
Questioning then resumed regarding the defendant’s Grand Jury testimony. At the closing of the examination, Officer Kava-naugh again caused the machine to discharge numerous sheets of the test material. The videotape revealed the following discussion between Officer Kavanaugh and the defendant:
Q. That’s it. Looks like you had some big problems on this test.
A. What’s wrong with this one?
*114 Q. It’s worse than yesterday.
A. It has to be the machine.
Q. It’s just recording what you tell it. This is — on your answers to some of these questions it sure goes haywire. A. What does it say?
Q. I didn’t sit down and look at all of them; but according to that one you didn’t tell much truth about anything. A. Well, I remember telling them I was selling oil field equipment to Buck Rush and Danny Bradshaw ...
Q. I’m not doubting that, but what you told the Grand Jury, though. You should have answered me of what you actually told them — it’s like I told you, if what you told me was 99% of the truth and left out — and 1% is a lie, you see, it just shows it’s a lie.
A. Well, all I know is I lied to the Grand Jury. That’s for sure.
These statements made by the examiner recorded on the videotape and played to the jury impermissibly disclose results of the polygraph examination as interpreted by the examiner conducting the test. The trial court erred in allowing the introduction of the videotape on this basis alone.
The remaining inquiry calls for a determination of whether the admission of the videotape is reversible error. The state contends the probative value of defendant’s confession to the falsity of his statements outweighs any prejudicial effect caused by the jury’s observance of the polygraph examination. We disagree. There is more than a reasonable possibility the veracity of defendant’s statements to the Grand Jury were seriously impaired in the minds of the jurors at the outset because the jury was aware the defendant was subjected to a polygraph examination prior to the trial. The video of the polygraph was even more damaging because it contained statements by the examiner to the defendant that he was in fact lying on the polygraph test. This polygraph examination could only reasonably be viewed by the jury as the basis for the resulting perjury charge. Allowing the jury to view the defendant undergoing the examination emphasized the inference created by the introduction of the videotape. The erroneous admission is not harmless, but rather proved prejudicial to the defendant because there is more than a reasonable possibility the error contributed to the defendant’s conviction. State v. Ho-cum, supra; State v. Gibson, 391 So.2d 421 (La.1980).
The state introduced at the perjury trial a 51-item questionnaire prepared by Captain Larry Rhodes relating to the Perry Cason homicide which the state alleged the defendant had answered prior to the convening of the Grand Jury. At the Grand Jury hearing, the defendant testified the responses on the questionnaire were not his handwriting nor had Captain Rhodes given him any questionnaire to answer. The defendant admitted on the videotape that he, had answered the questions prepared by Captain Rhodes though they were not propounded to him by Rhodes. Captain Rhodes testified on cross-examination at the perjury trial he did not personally give the questionnaire to the defendant nor did he know whose handwriting was on the questionnaire returned to him and alleged to be completed by the defendant. No other evidence was introduced by the state to prove the falsity of defendant’s statements to the Grand Jury regarding the questionnaire other than the inadmissible polygraph. No other relevant evidence was introduced by the state to prove the falsity of defendant’s statements before the Grand Jury.
Although not necessary to the resolution of the case, we note defense counsel also objected to the introduction of the videotape on the basis it contained references to other crimes. The videotape contained no less than fifteen references made by Officer Kavanaugh to defendant’s participation in the theft of oil field equipment. The trial court sustained the objection as to the admissibility of other crimes evidence which could only have been accomplished by excising numerous references to other crimes from the videotape. We conclude the trial judge contemplated this method of implementing his order sustaining the defendant’s objection; however, we note that at one point in the dialogue sustaining the *115 defendant’s objections to the admissibility of the videotape, the trial judge made the specific holding that the tape was admissible in its entirety. The trial judge overruled the defendant’s numerous objections to the admissibility of the tape because it was a lengthy video and sound transcription of a polygraph examination. We note from the trial transcript at the point where the videotape was actually played to the jury the statement of the court reporter to the following effect: “VIDEO TAPE IS PLAYED FOR THE JURY.” There is contained in this statement no reference to any deletion from the tape. We, however, have gleaned from the minutes of this record an indication that other crimes evidence was probably eliminated from the tape as same was played. The minute entry is reflected as follows: “The audio/video tape was played for the jury (partially).”
We observe that successful elimination of all other crimes evidence from this tape would have required extensive editing and we cannot tell from the face of the record how complete this editing was performed. We do note, however, that the defendant makes no assignment on appeal with regard to other crimes evidence.
Both assignment of errors one and two have merit. Not only do we find reversible error because the trial judge permitted the inadmissible polygraph to be played to the jury, we also find this error forms the basis for sustaining assignment of error number two. Without the polygraph, there is no direct evidence of false statements made before the Grand Jury. Without the polygraph, there is no basis for finding the defendant lied to the Grand Jury with regard to his having answered the 50-odd questions prepared by Officer Rhodes.
For these reasons, there is no evidence that had been placed before this jury to establish the defendant made false statements to the Grand Jury, therefore, there is no support for the perjury charge.
For the reasons expressed above we conclude the trial court erred in ruling the polygraph evidence admissible. The defendant’s sentence is vacated and conviction is reversed. The case is remanded to the trial court for proceedings consistent with this opinion.
REVERSED and REMANDED.
ON APPLICATION FOR REHEARING
Before MARVIN, JASPER E. JONES, LINDSAY, HALL and FRED W. JONES, JJ.
Rehearing denied.