533 So.2d 1311 (1988)
STATE of Louisiana, Plaintiff-Appellee,
v.
Charles F. ARNOLD, Defendant-Appellant.
No. K88-461.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1988.
Writ Denied December 9, 1989.
Ronald E. Dauterive, Lafayette, for defendant-appellant.
Bernard E. Boudreaux, Jr., Dist. Atty., New Iberia, for plaintiff-appellee.
Before GUIDRY, STOKER and KING, JJ.
KING, Judge.
This court granted supervisory writs in this case to review the trial court's denial of defendant's pre-trial "Motion To Permit Introduction Of Results Of Voice Stress Analysis Test" at the time of the trial of this matter.
The sole issue presented for review is whether or not the defendant should be permitted to introduce the results of a voice stress analysis test and the circumstances surrounding the test at the time of the trial of this matter.
Charles Arnold (hereinafter defendant) was indicted by a grand jury with two counts of first degree murder in violation of La.R.S. 14:30. Defendant filed numerous pre-trial motions including a pre-trial motion to permit introduction at trial of results of a voice stress analysis test performed on defendant and the circumstances surrounding the tests. This motion also *1312 mentioned two video-taped statements taken from the defendant, one the night of the homicides and one three days after the homicides, and also sought their introduction at the time of trial. Defendant also filed a pre-trial motion to suppress evidence. After a hearing on the motions, the trial court denied defendant's motion to introduce the results of the voice stress analysis test and the circumstances surrounding the test and also denied defendant's motion to suppress evidence. Defendant sought review of the trial court's rulings by supervisory writs to this court. We granted the writ in part to review the trial court's ruling on the admissibility at trial of the results of the voice stress analysis test and the circumstances surrounding the test and denied the writ insofar as it sought review of the trial court's ruling denying defendant's motion to suppress. State v. Arnold, (La.App. 3 Cir.1988), an unreported decision rendered on May 2, 1988 in case Number K88-461 on the Docket of this court. Defendant then sought review by supervisory writs to the Louisiana Supreme Court of this court's denial of that portion of his supervisory writ application which sought to have this court review the trial court's denial of his motion to suppress. The Louisiana Supreme Court denied defendant's writ application. State v. Arnold, 526 So.2d 805 (La.1988). The issue of whether or not the trial court correctly denied defendant's pre-trial motion to suppress is not presently before this court. Only the issue of the admissibility at the time of trial of the voice stress analysis test result and the circumstances surrounding the test is now before this court.

FACTS
On December 10, 1987, Betty Arnold, defendant's wife, and Leonard St. Julien were found shot to death in the Arnold home in Iberia Parish, Louisiana. After receiving a telephone call from defendant, Iberia Sheriff's deputies went to defendant's home. There they discovered the bodies with four gunshot wounds in Mrs. Arnold and five gunshot wounds in St. Julien.
Defendant gave a tape recorded oral statement to a Deputy Sheriff at the scene. Defendant stated that he had brought St. Julien to his home that afternoon to perform yard work and that he intended to assist St. Julien. Defendant then allegedly went into the bathroom to change his clothes. From his position in the bathroom, he recalled hearing gunshots in the den, just minutes after St. Julien was brought into the house. Defendant stated that he ran into the den and observed St. Julien holding his .22 caliber rifle and Mrs. Arnold's body lying on the floor. At this point, St. Julien saw him and attempted to flee. A struggle ensued in a hallway, in which defendant successfully wrestled the rifle from St. Julien and shot him several times. After examining his wife's body and discovering she was dead, defendant returned to St. Julien's body and, in a fit of anger, emptied the rifle into him.
Defendant was then taken to the Iberia Parish Sheriff's Office and questioned again. At about 8:00 P.M. on the night of December 10, 1987, defendant made a video-taped oral statement. During this first video-taped statement, Captain Kelly Davis told defendant that the matter would be submitted to a grand jury. He asked defendant, since there were no witnesses to the homicides, if he would take a psychological stress evaluation test (hereinafter PSE test). Davis told defendant that the PSE test was "like a polygraph" and asked defendant if he was opposed to the idea. Defendant said, "No, okay." This was the only reference to a lie detector test in the first video-tape. The PSE test was administered by Linda Boudreaux, an Iberia Parish Sheriff's Deputy, and defendant was advised that the results indicated he had tested truthfully about the homicides and he was allowed to leave.
On December 13, 1987, at the request of the Iberia Parish Sheriff's Department, defendant made a second video-taped statement. During the statement, defendant was accused of lying about the events surrounding the homicides. The only reference to a lie detector test on this second video-tape came when Davis accused defendant *1313 of picking up St. Julien in his car at 9:00 A.M. on the morning of the murders. Defendant stated that this was not true and that he would "swear to this on a polygraph test." Defendant was then placed under arrest for the murder of his wife and St. Julien. After his arrest, defendant offered to take a second lie detector test, but the request was denied.
Defendant filed a pre-trial "Motion To Permit Introduction Of Results Of Voice Stress Analysis Test" and the circumstances surrounding the test. Defendant alleged in his motion that his counsel had been advised by the District Attorney's Office that the two video-taped oral statements of defendant would be introduced into evidence at the trial by the State. Defendant further alleged he was entitled to have the jury see and hear the entirety of the two video-taped statements given by him and to be made aware of the results of the voice stress analysis test given to him by the Iberia Parish Sheriff's Office which were referred to in the video-taped statements.
In its written answer to defendant's "Motion To Permit Introduction Of Results Of Voice Stress Analysis Test," the State admitted that it had no objection to defendant playing his video-taped statements of December 10, 1987 and December 13, 1987 in their entirety to the jury during the trial. The State's answer affirmed that the State also intended to use these video-taped statements in their entirety in its case-in-chief at trial. The State objected to defendant's motion seeking to permit the introduction of the PSE test results and circumstances surrounding the test into evidence and their presentation to the jury at the trial. The State also filed a pre-trial motion in limine seeking to prohibit defendant from referring to any lie detector tests during the trial.
After a hearing of the motions the trial court denied the defendant's motion to permit introduction of the PSE test results at the time of the trial, finding that such tests and results are legally inadmissable. The trial court permitted defendant to make a proffer of evidence on this motion for the record. Since the State did not object to defendant's motion to allow the jury to see and hear the two video-taped statements the court granted that part of defendant's motion. The trial court granted the State's motion in limine and entered an order prohibiting defendant or his counsel from making any reference at the time of the trial to any lie detector tests. Presumably this order will also require that any references to lie detector tests, PSE tests, or polygraph tests in the defendant's two videotaped statements to be excised prior to the video-tapes being shown to the jury at the time of trial.
Defendant sought and was granted a supervisory writ of review from the trial court's ruling on his motion denying him the right to introduce the results of the voice stress analysis test and the circumstances surrounding the test at trial.

LAW
Modern lie detection technique employs various devices such as polygraph machines and voice stress analyzers. There are now four or five different voice stress analyzers on the market and the proto-typical instrument is the Psychological Stress Evaluator (PSE). The PSE detects and measures subaudible and involuntary frequency modulations (FM) that are superimposed on audible voice frequencies. The frequency modulations, whose strength and pattern are inversely related to the degree of stress of the speaker at the moment of utterance, are said to result from minute oscillations of the muscles of the voice mechanism. Such oscillations, known as psychological tremors, are believed to be under control of the central nervous system during nonstressful periods. As stress is imposed, however, the autonomic nervous system gains dominance, resulting in the suppression of the microtumors. The suppression, indicative of emotional stress, is visibly displayed by the PSE machine as a characteristic wave form. The PSE uses electronic filtering and frequency discrimination techniques to process voice frequencies preserved on a normal tape recording. The stress-related FM patterns, displayed *1314 on a moving strip of heat sensitive paper, can be processed in several different modes of display for analysis. Because the recovery of the FM indicator spontaneously occurs with the removal of the stressing stimulus, stress in either narrative or monosyllable speech can be evaluated.[1]
A trained and experienced operator interprets these involuntary frequency modulations of the voice which occur while the subject is being asked carefully prepared questions. The PSE records only one involuntary response while other lie detector devices, such as the polygraph machine, measure involuntary responses in four or more areas such as changes in blood pressure, pulse rate, respiration, galvanic skin response, muscular movements in the arm, and subtle variations in the heart beat.[2]
The examiner prepares the subject for the test by explaining to him the theory and measurements involved in the PSE technique. After the test the examiner interprets the subject's physiological responses recorded during the test in connection with all other information gathered by the examiner, including his careful observation of the subject before and during the examination. Based upon these interpretations and information, the examiner arrives at an opinion as to whether the subject responded truthfully to questions during the test.
The Louisiana and Federal courts have both had occasion to examine the admissibility at trial of PSE results. In State v. Thompson, 381 So.2d 823 (La.1980) and United States v. Traficant, 566 F.Supp. 1046, 1047 (E.D.Ohio 1983), the courts found that the long line of cases which reject the admissibility of polygraph test results at trial is analagous. Moreover, the decision to admit evidence based on scientific processes is left to the trial court, which has considerable discretion in this area. See also United States v. Franks, 511 F.2d 25, 33 (6th Cir.1975) [citing United States v. Stifel, 433 F.2d 431, 437 (6th Cir.1970)., cert. denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971) ]; State v. Catanese, 368 So.2d 975 (La.1979). The Traficant court considered the PSE test under the "general acceptance" standard first enunciated in Frye v. United States, 293 F. 1013 (D.C.Cir.1923), and concluded that it could not find that the PSE is "sufficiently established to have gained general acceptance in the particular field in which it belongs." The Traficant court noted that there have been very few well-controlled studies of the reliability of voice stress analysis and that none of these studies have shown that voice stress analyzers are effective in detecting deception. Further, the Traficant court noted that several studies revealed that PSE testing results yielded an accuracy rate only slightly higher than, and in some cases lower than, chance expectancy rates. United States v. Traficant, supra, at page 1047.
It has long been the judicial policy of Louisiana to exclude polygraph evidence in criminal trials, State v. Catanese, supra, although polygraph evidence has been declared admissible in post-trial proceedings, within judicial discretion, where guilt or innocence is not an issue, State v. Humphrey, 445 So.2d 1155 (La.1984); State v. Catanese, supra and, within judicial discretion, in sentencing proceedings, State v. Graham, 513 So.2d 419 (La.App. 2 Cir. 1987). When the Catanese court rejected the "general acceptance" standard barring admissibility of a scientific test, and adopted a balancing process of the probative value against the reasons for exclusion, Louisiana had no law providing for the licensing, regulating, or disciplining of the operators of polygraph devices or operators of emotional stress devices. The Catanese court considered this lack of licensing and control as one of the interrelated reasons in rejecting use of a lie detector test in a criminal trial. Since rendition of the Catanese decision the Louisiana legislature has provided a method for certifying *1315 and licensing both polygraph operators, La. R.S. 37:2838, et seq, and stress analysis operators, La.R.S. 37:2861, et seq. However, it should be noted that the licensing law for emotional stress analysis operators specifically provides that nothing in that law shall be considered as permitting the results of stress analysis examinations to be introduced or admitted as evidence in a court of law. La.R.S. 37:2887(A). In recent years the question of the admissibility of PSE tests in criminal trials in Louisiana has been raised and their reception has been no better than that of polygraph tests. See e.g. State v. Thompson, supra; State v. Brown, 497 So.2d 29 (La.App. 5 Cir.1986); State v. Segura, 464 So.2d 1116 (La.App. 3 Cir.1985), writ den., 468 So.2d 1203 (La.1985). The Louisiana courts have also made it clear that the Catanese rule excluding polygraph evidence for any purpose in criminal trials also operates to prevent any reference during trial to the fact that a witness has taken a polygraph test or PSE test with respect to the subject matter of his testimony. State v. Hocum, 456 So.2d 602 (La.1984), writ den., 472 So.2d 922 (La. 1985); State v. Thompson, supra. The Louisiana Supreme Court has also held, based upon the premise that PSE tests are inadmissible, that any pre-test interviews are inadmissible where they refer to the fact that a polygraph test or a PSE test was conducted. See State v. Hocum, supra; State v. Thompson, supra. The Thompson court made it clear that the Catanese rule excluding polygraph evidence for any purpose also operates to prevent any reference at trial that a witness has taken a PSE examination. This precaution eliminates any problem with the jury making inferences that the witness passed the lie detector test and, therefore, is testifying truthfully. State v. Davis, 407 So.2d 702, 706 (La.1981); State v. Refuge, 270 So.2d 842, 846 (La.1972).
In a proffer of proof made in connection with a hearing on defendant's motion, Deputy Boudreaux, who administered the PSE test, testified that she had never been a witness in court concerning PSE tests. She further stated that she could not say whether the PSE machine which she used to administer the test to defendant was properly calibrated, that only a very small percentage of her time was spent with PSE tests, and that the PSE was simply an investigative tool. Boudreaux related that she was reluctant to give the defendant the test, because of the nature of the case, and that she was not satisfied that she had sufficient experience to give such a test if the decision to charge the defendant with the crime of murder would be affected. Further, she mentioned that she was not satisfied with the scope and depth of her own pre-test preparation of defendant, which was of paramount importance, and that she was not satisfied with the validity of the test she had given to the defendant. Deputy Boudreaux told of her experience in previous cases where later events proved her test results to have been wrong, and she concluded that she still had a question in her mind whether she properly prepared the defendant during the pre-test procedures.
Ron Lauland, defendant's expert witness, testified by proffer that, in his opinion, the PSE is superior to the polygraph. He opined that the validity of a voice stress analysis was dependent primarily upon the pre-test interview and the expertise of the operator. Mr. Lauland stated that in this case the testimony of Deputy Boudreaux was extremely pertinent in connection with the defendant's test and results sought to be admitted.
Applying the principles of law set forth above, we find that the trial court was correct in denying relator's Motion To Permit Introduction Of Results Of Voice Stress Analysis Test and the circumstances surrounding the test at the time of trial.
The ruling of the trial court granting defendant's motion, and allowing defendant to play the two videotaped statements in their entirety to the jury at the time of trial, should be clarified. The two video-taped statements did contain certain references to the PSE test and to polygraph tests which should be excised from the video-tapes before they are shown to the jury at the time of trial. Therefore, this *1316 court amends the order of the trial court granting the defendant's motion to have his video-taped statements of December 10, 1987 and December 13, 1987 exhibited in their entirety to the jury at the time of trial by ordering that any references to lie detector tests, PSE tests, polygraph tests, or the results thereof in the defendant's two video-taped statements must be excised from the defendant's two video-taped statements before their receipt into evidence and presentation to the jury.
For these reasons, the writ previously granted in this matter is made peremptory in part and is recalled and denied in part. The matter is remanded to the trial court for further proceedings consistent with this opinion.
WRIT MADE PEREMPTORY IN PART; WRIT RECALLED AND DENIED IN PART; CASE REMANDED.
NOTES
[1] Horvath, Detecting Deception: The Promise and Reality of Voice Stress Analysis, 27 Journal of Forensic Science, No. 2, pages 340-351 (April, 1982).
[2] See Articles collected in Legal Admissibility of the Polygraph, pages 257-288 (Ed.N.Ansley 1975).