566 So.2d 1032 (1990)
STATE of Louisiana
v.
John Lee SEMIEN.
No. CR89-1278.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1990.
Writ Denied November 16, 1990.
*1033 Edward Lopez, Opelousas, for defendant-appellant.
Morgan J. Goudeau, III, Dist. Atty., Opelousas, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and GUIDRY and FORET, JJ.
DOMENGEAUX, Chief Judge.
Defendant, John Lee Semien, was convicted as charged by a twelve member jury of armed robbery, a violation of La.R.S. 14:64. He was sentenced to serve forty years at hard labor without benefit of probation, parole or suspension of sentence. He appeals this conviction and sentence based upon three assignments of error.

FACTS
On the night of March 8, 1988, between 11 p.m. and midnight, the defendant entered a Charter Foods convenience store in Opelousas, Louisiana. He placed a brown paper sack on the counter and demanded that the cashier, Lawrence Hebert, place everything from the register into the sack. The defendant then pulled a pistol from his pocket. Hebert placed $60 to $75 in the sack and went into the store's office, at the defendant's command. Defendant left, and Hebert reported the robbery to the police.
Defendant was found later that night sitting in his car at a nightclub in Opelousas with two other men, Byron Pickney and Yural Henry. Officer Willie Smith of the Opelousas Police Department asked the defendant to follow him to the station. Pickney testified that while en route to the police station, the defendant took money from his socks and his wallet and stuffed it in his undershorts. At the police station, the defendant was placed under arrest and searched. The money was found. Defendant consented to a search of his car, where the loaded gun and the brown paper sack were found.
At trial, Hebert made a positive identification of the defendant as the robber, and he identified the sack and the gun used in the crime. Additionally, the defendant made inculpatory statements to a state policeman, Jay Thompson, which corroborated the incident as explained by Hebert and which were used to impeach the defendant's testimony at trial.

ASSIGNMENT OF ERROR NO. 1
Defendant argues that the trial court erred in failing to declare a mistrial after the prosecutor referred to the results *1034 of a polygraph test administered to the defendant.
On June 1, 1988, the defendant was taken to Baton Rouge to be given a polygraph test concerning the armed robbery in question. The test was administered by Jay Thompson of the Louisiana State Police. At trial on cross examination, the district attorney questioned the defendant about several inculpatory statements he allegedly made to Thompson concerning the robbery. The defendant testified he never made such statements, and he accused Thompson of lying.
On redirect, the following exchange occurred:
Q. You used the phrase, that the police officer was trying "to deal" you. Now, I don't even knowwhat did you mean by the police officer was trying "to deal" you?
A. Well, after we went through the polygraph test, I know that my test was coming out pretty good
MR. MILLER: Wait a second; I object to that. If he wants to get into that, I can put on something that it wasn't coming out good.
MR. LOPEZ: Your Honor, that's pure
MR. MILLER: Well, why did he mention that?
THE COURT: Everybody hush now. Take the jury out, Mr. Pitre.
As a result of the statement referring to the polygraph test and its results, defense counsel requested a mistrial. The trial judge denied this request. Instead, the judge admonished the jury to disregard the statement made by the district attorney. Defendant presently urges that this was not sufficient to cure the prejudice created by the district attorney's remarks that the test "wasn't coming out good."
The results of a lie detector test are inadmissible when offered by either party, either as substantive evidence or as relating to the credibility of a party or witness. State v. Davis, 351 So.2d 771 (La.1977); State v. Catanese, 368 So.2d 975 (La.1979). The admission of such test results usurps the jury's prerogative on the question of credibility. State v. Davis, supra. Underlying this prohibition is the lack of probative value and insufficient scientific reliability, as well as the possible prejudicial effect on the lay trier of fact. State v. Refuge, 270 So.2d 842 (La.1984).
Any reference to the results of the polygraph test by either party was improper. However, an appellate court will not automatically reverse a conviction whenever an impermissible reference to a polygraph examination is made during a criminal trial. State v. Hocum, 456 So.2d 602 (La.1984). A reversal and a new trial are required only if there is a reasonable possibility that the error complained of might have contributed to the conviction. State v. Hocum, supra.
The reference to the polygraph results at trial did not mandate a mistrial. The first reference to the test results was made by the defendant himself, in an unresponsive answer to a question, on redirect examination. We find the prosecutor's remarks were directly provoked by the defendant's unsolicited comment that the test results were favorable to him. Additionally, the facts of this case plainly point to the defendant's guilt. The victim positively identified the defendant as the robber. Defendant was found the same night of the crime with an empty sack similar to the one used in the robbery and a gun identified as the weapon used. Defendant was found with a large amount of money stashed in his undershorts. Finally, defendant made several inculpatory statements which linked him to the armed robbery. We find the statement made concerning the polygraph examination did not result in an unreliable conviction. The trial judge did not err in denying the defendant's request for a mistrial.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial court erred in imposing an unconstitutionally excessive *1035 sentence.[1]
The maximum sentence which could have been imposed was ninety-nine years. La.R.S. 14:64. Defendant was sentenced to forty years, a period less than the statutory maximum. However, the excessiveness of this sentence is still reviewable. La. Const. Art. I, § 20; State v. Sepulvado, 367 So.2d 762 (La.1979).
In the present case, the record reflects the defendant was a fourth offender, with two prior armed robbery convictions and one prior conviction of simple burglary. Given the defendant's past conduct, which shows a likelihood of recidivism, the sentence imposed is not so disproportionate to the crime committed, in light of the harm caused to society, as to shock one's sense of justice. The sentencing judge did not abuse his discretion in imposing the challenged sentence.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial court erred in allowing into evidence statements made to Officer Jay Thompson. Defendant argues that proper Miranda warnings were not given before the statements were made.
Before allowing Thompson to testify in front of the jury, a foundation was laid by the State to prove the admissibility of the inculpatory statements. The record reveals that Thompson asked the defendant a number of questions pursuant to a "Miranda Rights" form before beginning the interrogation. Thompson then recorded the answers of the defendant, and the defendant signed the form. Some of the questions asked included, "When can you have an attorney?" and "What will happen if you cannot afford an attorney and you want one?" Defense counsel objected to the admissibility of the inculpatory statements because of what he called a "bizarre form" of a Miranda warning.
In order for a statement made by an accused during a custodial interrogation to be admissible, the State must prove that the accused had been advised of his Miranda rights and that he waived his right to counsel prior to the interrogation. State v. Harper, 430 So.2d 627 (La.1983). Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Louisiana chose to incorporate this requirement in our state constitution. Article I, § 13 provides, in part:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to assistance of counsel and, if indigent, his right to court appointed counsel.
The record reveals that the defendant was fully advised of his Miranda rights at the time of his arrest on March 8, 1988. At no time subsequent to this warning did he invoke his right to counsel or his right to remain silent.
Before the polygraph examination on June 1, 1988, the defendant was again advised of his Miranda rights through the use of the form in question, which we attach as an appendix. The questions on the form correspond to the four rights guaranteed by Miranda and the federal and state constitutions. The defendant's answers to these questions indicate he knowingly and intelligently waived those rights. The trial judge did not err in allowing *1036 the inculpatory statements into the evidence.
This assignment lacks merit.
For the above and foregoing reasons the conviction and sentence of the defendant are affirmed.
AFFIRMED.

*1037 APPENDIX

NOTES
[1] The author of this opinion is compelled to again state his position as to appellate review of sentences for excessiveness. Our state constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See, State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), concurring opinion at 533; State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir. 1983), concurring opinion at 1339, writ denied, 433 So.2d 729 (La.1983); State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), concurring opinion at 1169; State v. Rainwater, 457 So.2d 1280 (La.App. 3rd Cir.1984), concurring opinion at 1282.