LINDSAY, Judge.
The defendant, General Motors Corporation, appeals a jury verdict and trial court judgment finding that a defect in a General Motors vehicle caused a fire which destroyed the vehicle and extensively damaged the house where the vehicle was parked. We affirm the trial court judgment.
FACTS
In June, 1983, Mr. and Mrs. Michael W. Riels purchased a 1983 Oldsmobile Eighty-eight, manufactured by General Motors Corporation (GM). On the evening of September 23, 1984, the Riels drove the car to a local parish fair. When they returned home between 6:00 and 7:30 p.m., the vehicle was parked under the carport of their residence.
The next morning, between the approximate hours of 3:00 to 4:00 a.m., the Riels awakened to discover that the automobile and their carport were on fire. The Riels escaped unharmed but the automobile was a total loss and their residence was heavily damaged.
The house was insured by American Manufacturers Mutual Insurance Company (Manufacturers) and the car was insured by American Employers Mutual Insurance Company (Employers). Manufacturers paid the Riels $56,465.92 for damage to the house and Employers paid them $10,300 for the car. The plaintiffs, Manufacturers and Employers, were subrogated to the Riels’ rights and filed suit against the defendant, GM, claiming that the automobile had a redhibitory defect which caused it to catch fire. The plaintiffs claimed that the fire *936 occurred in the left front quadrant of the car and was caused by a defect in the engine and/or an inherent defect in the vehicle’s electrical system. In the alternative, the plaintiffs alleged that the fire resulted from GM’s negligence.
GM contended that the fire was caused by arson. GM pointed out that a previous vehicle owned by the Riels had been vandalized, with acid poured on the vinyl top. Also, some houses in the neighborhood had been burned and an automobile belonging to the Riels’ next door neighbor had been vandalized.
At trial, Mr. Grady Smith, an investigator from the state fire marshal’s office, testified that he was dispatched to the scene on the morning of the fire to make an investigation. Smith used a hydrocarbon detection device to determine if any petroleum based products had been used to start a fire in the car. The device did not indicate any such substances.
The car was removed from the carport. Mr. Smith then directed a fire fighter who was on the scene to spray off the carport, scattering and washing away all of the debris. After the carport had been washed, Mr. Smith looked for “spalling” or pitting of the concrete slab underneath the car which would indicate that some substance was used to set the car on fire. Smith did not detect any spalling.
Following the investigation at the scene, the car was taken away to be stored. However, due to some unexplained error, the car was disposed of before GM had an opportunity to examine it.
Before trial, the parties stipulated there was no dispute as to the amount paid by the plaintiffs to the Riels under the terms of the insurance agreements.
The defendant filed a motion in limine, contending that Grady Smith of the fire marshal’s office was not an expert in the cause and origin of fires and should not be allowed to offer opinions at trial concerning the cause of the fire. The defendant also objected to any testimony by Smith about his use of the hydrocarbon detection device without first laying a foundation concerning the function and calibration of the device.
The motion in limine was taken up prior to trial. It was determined that the plaintiff would not attempt to present Mr. Smith as an expert in the cause and origin of fires. The court ruled that Mr. Smith could testify only as to the procedures involved in his investigation and whether he found any evidence of arson or criminal conduct. The court also indicated that Mr. Smith would be allowed to testify about procedures and findings in connection with use of the hydrocarbon detection device only if a proper foundation was laid. Ultimately, the trial court did allow Mr. Smith to discuss his use of the hydrocarbon detection device even though the court expressed doubt as to whether the device operated on a scientific principle and noted that Mr. Smith did not know very much about how the machine operated.
The case was tried before a six person jury. On April 18, 1990, the jury rendered a unanimous verdict in favor of the plaintiffs, finding that the fire was caused due to a manufacturing defect in the automobile and rejecting the defendant’s contention that the fire was the result of arson.
The defendant appealed suspensively, alleging that the court should have excluded reference to the test results of the hydrocarbon device without laying a proper foundation for its reliability. The defendant also argues that Grady Smith was not qualified as an expert and should not have been allowed to give expert testimony as to the cause and origin of the fire. The defendant then contends that in light of the alleged errors, this court should make an independent review of the record to determine whether the plaintiffs’ circumstantial evidence in this redhibition case negates all other reasonable hypotheses as to the cause of the fire.
ADMISSIBILITY OF TEST RESULTS OF HYDROCARBON DETECTION DEVICE
The defendant contends the trial court erred in allowing evidence of the test results of the hydrocarbon detection device. *937 Although this argument has merit, the error is harmless.
The defendant argues that the plaintiff should have been required to lay a foundation concerning the general reliability of hydrocarbon detection devices before allowing the test results to be admitted into evidence. The defendant also argues the plaintiff was required to show the reliability of the particular device used in this case.
Some courts have stated the general rule to be that results of scientific tests and expert opinions based thereon are admissible if the scientific principle is generally considered reliable by the scientific community when conducted by a competent individual. State v. Deville, 524 So.2d 1334 (La.App. 1st Cir.1988), writ denied 531 So.2d 263 (La.1988); State v. Neville, 524 So.2d 1338 (La.App. 1st Cir.1988), writ denied 531 So.2d 263 (La.1988); State v. Boyer, 406 So.2d 143 (La.1981).
Other courts in this state have stated that the “general acceptance” standard governing the admissibility of a scientific test has been rejected and has instead been replaced by a process of balancing the probative value of the results against the reasons for exclusion. State v. Arnold, 533 So.2d 1311 (La.App. 3rd Cir.1988), writ denied 534 So.2d 959 (La.1988), citing State v. Catanese, 368 So.2d 975 (La.1979). Under the facts of this case, the test results of the hydrocarbon detection device were not admissible under either standard.
No evidence was presented as to whether hydrocarbon detection devices are generally accepted as reliable nor was there any showing of how commonly such devices are used in the investigation of fires. In addition, there was no showing concerning the reliability of this particular device, nor was there a showing that Mr. Smith was qualified to use the device or to testify regarding the test results.
Mr. Smith testified that the device was obtained in April, 1983, but was never re-calibrated or checked for accuracy by the manufacturer. Mr. Smith had received no formal training in the use of the device. He testified he was taught to use the device by another employee of the fire marshal’s office. Mr. Smith did not know the scientific principles upon which the device operated, testifying basically that he turned on the instrument and it either detected hydrocarbons or it did not.
Mr. Smith acknowledged that this device was not “fool proof” in its operation. He testified that on occasion the device would indicate the presence of hydrocarbons which were not confirmed by laboratory testing of samples taken from fire scenes. However, Mr. Smith stated that when the device failed to indicate the presence of hydrocarbons, he did not take samples to the laboratory to determine whether hydrocarbons were in fact present.
Under these circumstances, it cannot be said that the plaintiffs adequately established the reliability of hydrocarbon detection devices in general nor did they adequately establish the reliability of this particular instrument.[1]
Because the plaintiff failed to establish that the test results were reliable, it cannot be said that the probative value which might be assigned to such test results would outweigh the reasons for its exclusion. As stated in State v. Catanese, supra, reasons for exclusion may include the concern that a trier of fact may give undue weight to the opinions based upon scientific test results.
Here, based upon the foundation presented by the plaintiff, we find that the trial court erred in admitting the test results of the hydrocarbon detection device.[2] However, for the reasons stated below, we find *938 that any error committed by the trial court in allowing into evidence the test results of the hydrocarbon detection device constituted harmless error.
HARMLESS ERROR
In reaching a decision on the effect of the errors alleged by the defendant, we must consider, (1) was the particular ruling complained of error, and, if so, (2) did the error harm or prejudice the defendant’s cause, for unless it does, reversal is not warranted. The party alleging error has the burden of showing the error was prejudicial to the case. In other words, the determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. Neumyer v. Terral, 478 So.2d 1281 (La.App. 5th Cir.1985), writ denied 481 So.2d 631 (La.1986); Wallace v. Upjohn Company, 535 So.2d 1110 (La.App. 1st Cir. 1988), writ denied 539 So.2d 630 (La.1989).
As stated above, the trial court erred in allowing testimony concerning the test results of the hydrocarbon detection device. However, we also find that the defendant has failed to show that the error was prejudicial to its case. Viewing the record in its totality, it does not appear that the testimony concerning the hydrocarbon detection device had a significant impact on the outcome of the case. Even without consideration of that evidence, the record contains substantial evidence to support the jury finding that the fire was caused by a defect in the automobile and was not the result of arson.
The plaintiffs presented the testimony of Mr. Donald Robert Dowling, an expert in the field of fire investigation. Mr. Dowling examined the scene and, after examining the physical evidence, he disputed the defendant’s theory that the fire was caused by arson. The defendant contended that the fire originated near the carport door and spread into the automobile. Mr. Dowl-ing stated that the damage to the vehicle was not consistent with that theory and that if the fire had originated near the carport door, the Riels would have been killed by heat when they opened the door on the morning of the fire. He stated that the fact that the tops of the car tires were burned, but the bottom of the tires were not burned, was consistent with his opinion that the fire started in the engine compartment of the car.
Mr. Dowling also noted that there was no spalling on the carport floor. Spalling is pitting of the concrete caused by acceler-ants burning on the concrete. Mr. Dowling noted that the burn pattern in this case was not consistent with the use of flammable liquids to start the fire.
Mr. Dowling also stated that soot and grease located in the lower portion of the car’s engine compartment would have burned off if the source of the fire was at ground level. However, the soot and grease located in the lower portion of the engine compartment was intact. Mr. Dowl-ing testified that the fire started in the left front of the engine compartment where the battery was located.
Andrew Nicolas Gilberg, an expert in automotive engineering and fire causation, also testified on behalf of the plaintiffs. Mr. Gilberg stated that the fire originated in the left front quadrant of the engine. He testified that the car battery provided the energy source for the fire and that a short circuit or a high resistance connection in a wiring harness in the engine compartment initiated the fire.
On the other hand, the defendant’s expert, Robert A. Heintz, an engineer employed by the defendant, disputed the testimony of the plaintiff’s experts that the fire originated in the engine compartment of the vehicle. Mr. Heintz was not able to personally examine the automobile because it was mistakenly disposed of before trial. Mr. Heintz testified that he did not think that any wiring in the engine compartment was energized so as to cause the fire. However, he admitted that a high resistance short circuit in this area could be theoretically possible and that there were three connections in the area with an energy potential.
It was Mr. Heintz’s opinion that the fire was caused by arson. Mr. Heintz noted *939 that there was a melted area on the bottom of an aluminum screen door which opened from the house onto the carport. Mr. Heintz stated that he thought the fire started in the front of the car at a low level by means of some flammable or combustible substance and then spread to the car between the engine and the bumper. Mr. Heintz theorized that the fire spread into the passenger compartment through the air conditioning unit. Mr. Heintz testified that the top of the tires burned because they were closer to “fuel loads.” However, he was unable to explain why the soot and grease on the lower portion of the car was not burned off if the fire actually started from below. Although Mr. Heintz noticed some spalling on the concrete floor, he did not examine the floor until approximately six years after the fire.
As stated above, this is a redhibition case based upon circumstantial evidence. In such a case, circumstantial evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Lacy v. Louisiana Coca-Cola Bottling Company, Ltd,., 452 So.2d 162 (La.1984). The evidence presented by the plaintiff and the defendant was conflicting. The jury obviously found the plaintiffs’ experts to be credible. In a situation where the fact finder’s decision is based on crediting the testimony of one of two or more witnesses, this finding can almost never be found to be manifestly erroneous or clearly wrong. White v. McCoy, 552 So.2d 649 (La.App.2d Cir.1989). In the present case, the jury’s finding that the fire resulted from a redhibitory defect in the automobile rather than from arson or vandalism, was not manifestly erroneous or clearly wrong. Therefore, due to the ample admissible evidence supporting the jury verdict, we find that any error committed by the trial court in admitting evidence regarding the test results of the hydrocarbon detection device was harmless.
OPINION TESTIMONY
The defendant argues that the trial court erred in allowing Grady Smith, who was not qualified as an expert, to give opinion testimony as to the cause and origin of the fire. The defendant fails to specify exactly what portion of Mr. Smith’s testimony constituted objectionable opinion testimony concerning the cause and origin of this fire. We have examined Mr. Smith’s testimony and conclude that the defendant’s assignment of error is without merit.
At the hearing on the motion in limine, the defendant objected to allowing Mr. Smith to offer opinion testimony about the cause and origin of the fire. Counsel for the plaintiff stated that Mr. Smith was not being offered as an expert in the cause and origin of fires but that his testimony was to be limited to his investigation regarding “criminal activity, vandalism, [and] arson” at the scene. The trial court ruled that Mr. Smith would be allowed to testify only as to procedures involved in his investigation and whether that investigation revealed any evidence of criminal conduct.
When Mr. Smith took the witness stand he was not tendered or accepted as an expert witness. Mr. Smith’s testimony was properly limited to the court’s ruling and reflected only the steps employed in investigating the fire. Mr. Smith testified that when he arrived at the scene, the hood of the car was properly secured. He testified that the hood of the car was opened and the engine compartment was inspected. However, Mr. Smith also stated that it appeared that the fire occurred underneath the hood of the car at a higher level than ground level. At this point, defense counsel promptly objected to this comment and the objection was sustained. The trial court then instructed the jury to disregard Mr. Smith’s response.
Only one other response by Mr. Smith later in his testimony can arguably be said to constitute opinion as to the origin of the fire. At one point, Mr. Smith stated that after looking in the engine compartment of the car, it was his opinion that the most intensive fire was on the left side of the motor, on the driver’s side underneath the hood. No objection to this response *940 was made by defense counsel. In the absence of an objection, the complaining party must be deemed to have waived his right to complain of an alleged impropriety on appeal. The reason therefor is that in the absence of an objection, the trial court is afforded no opportunity to prevent or correct the alleged error. LSA-C.C.P. Art. 1635; Calderon v. Johnson, 453 So.2d 615 (La.App. 1st Cir.1984); Schoonmaker v. Capital Towing Company, 512 So.2d 480 (La.App. 1st Cir.1987), writ denied 514 So.2d 458 (La.1987); Maxwell v. Soileau, 561 So.2d 1378 (La.App.2d Cir.1990), writ denied 567 So.2d 1123, 1124 (La.1990); Circello v. Government Employees Insurance Company, 425 So.2d 239 (La.App. 1st Cir.1982), writ denied 429 So.2d 145 (La.1982). Therefore, based upon the showing made, we do not find that the trial court improperly allowed Mr. Smith to give opinion testimony.
CONCLUSION
For the reasons stated above, we affirm the jury verdict and trial court judgment in favor of the plaintiffs, American Manufacturers Mutual Insurance Company and American Employers Mutual Insurance Company, and against the defendant, General Motors Corporation. Costs are assessed to the defendant.
AFFIRMED.

. We note that the defendant cites State v. Schrader, 518 So.2d 1024 (La.1988) to support the argument that hydrocarbon detection devices are not generally accepted as reliable. However, Schrader dealt with a scientific treatise calling into question the reliability of an "explosion meter.” We cannot determine any correlation between the device mentioned in Schrader and the device at issue in this case. Therefore, we find Schrader to be inapplicable.

. The defendant also argues that such test results should have been presented by expert testimony. However, since we find that the test results should not have been admitted, we pre-termit discussion of this issue.